**Hattie McLAURIN, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 98–CV–2058 (ARR).**

United States District Court, E.D. New York.

April 27, 2000.

Robert D. Gill, Simon & Newman, Forest Hills, NY, for Plaintiff.

Richard Weber, United States Attorney's Office, Brooklyn, NY, for Defendant.

## OPINION AND ORDER

ROSS, District Judge.

The plaintiff in this case sought review of a final decision by the Commissioner of Social Security denying her application for benefits. She now moves for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), including charges associated with a motion for summary judgment that she filed after the Commissioner, admitting that the agency erred, moved to remand the case. By opinion and order dated May 3, 1999, I granted the Commissioner's remand motion and denied plaintiff's cross-motion. Because I find, based on the record in this case, that plaintiff's motion did not have a reasonable chance of success, I conclude that the time she expended opposing the Commissioner's motion was excessive—indeed wholly unnecessary—and I reduce her fee award accordingly.

## BACKGROUND

As is explained more fully in the Opinion and Order dated May 3, 1999 ("Remand Op."), plaintiff, Hattie McLaurin, applied for disability insurance benefits on October 24, 1994, alleging disability as a result of diabetes and other ailments. Ms. McLaurin had previously worked as a cook and a cashier. After her claim was denied initially and upon reconsideration, a hearing was held on August 30, 1996 before Administrative Law Judge Martin K. Kahn ("ALJ"). Ms. McLaurin was represented at the hearing by Robert M. Gill, Esq., who has also been her counsel in the proceedings before this court. By opinion dated November 16, 1996, the ALJ denied Ms. McLaurin's request for benefits. The ALJ found that although Ms. McLaurin suffered a severe impairment as a result of her diabetes, hypertension, and hypercolestorolemia, the condition was well-controlled and did not prevent her from performing her past work as a cashier. The ALJ accordingly concluded that Ms. McLaurin was not disabled. On January 20, 1998, the Appeals Council denied plaintiff's request for reconsideration of the decision, and the decision thus became the final decision of the Commissioner.

In March 1998, Ms. McLaurin brought this action seeking reconsideration of the Commissioner's decision. After reviewing

the administrative transcript, the Commissioner timely offered to stipulate to a voluntary remand for further proceedings. Ms. McLaurin rejected this offer. The Commissioner then moved to remand the action. The Commissioner admitted that the ALJ had failed to consider properly Ms. McLaurin's treating physician's statement that Ms. McLaurin's diabetes impeded her ability to walk further than two blocks without pain or to stand for long periods of time and that the ALJ should have sought to clarify an ambiguity in the medical expert's testimony. The Commissioner contended nonetheless that remand, rather than reversal for benefits, was appropriate because an SSI consultative examiner had found that Ms. McLaurin had only trace leg edema and only slight knee swelling and because Ms. McLaurin had testified that she was able to perform standard household chores and food shopping.

Ms. McLaurin opposed the Commissioner's motion and filed a cross-motion for judgment on the pleadings seeking remand to the Commissioner solely for the calculation of benefits or, in the alternative, a remand order with specific directives from the district court. Of the directives sought, the most significant were that the matter be remanded to an ALJ other than Martin Kahn and that the new ALJ accept that Ms. McLaurin was capable of at most sedentary work. In her papers, Ms. McLaurin contended that an outright reversal was justified because, she argued, the medical evidence established unequivocally that she was limited to sedentary work and the vocational evidence demonstrated that she did not have transferable skills. Ms. McLaurin also expressed concern that agreeing to the Commissioner's remand motion without obtaining specific directives from the district court could permit the ALJ conducting the hearing to "alter a number of findings of fact ... set forth in the Commissioner's current final determination" that were "favorable to Ms. McLaurin." Plaintiff's Memorandum in Support of Cross–Motion, at 3.

By Opinion and Order dated May 3, 1999, I granted the Commissioner's motion and denied plaintiff's cross-motion. I observed in the opinion that both the medical expert and an SSI consultative examiner had concluded that Ms. McLaurin was capable of at least sedentary work. Because in certain circumstances an ALJ may disregard the opinion of a treating physician and adopt a contrary opinion of a consulting physician, see Remand Op. at 7 (citing *Rosa v. Callahan*, 168 F.3d 72, 81–83 (2d Cir.1999); 20 C.F.R. § 404.1527(d)(2)), I concluded that the record did not incontrovertibly support a finding of disability and thus that remand for reconsideration was appropriate. I also denied Ms. McLaurin's request that the case be transferred to an ALJ other than Judge Kahn because the record did not clearly demonstrate bias warranting such a directive. *See* Remand Op. at 7.

Ms. McLaurin now seeks an award of costs and attorneys' fees pursuant to the Equal Access to Justice Act. Defendant opposes plaintiff's request in part, contending that the hours plaintiff spent opposing the Commissioner's motion to remand were unnecessary and excessive.

## DISCUSSION

I. *Standard for an award of fees under EAJA*

The Equal Access to Justice Act ("EAJA") provides that a private party who "prevail[s]" in an action brought by or against the United States or any agency or official of the United States acting in her official capacity may be awarded a judgment for costs, 28 U.S.C. § 2412(a)(1), and shall be awarded fees and other expenses unless the government establishes that its position was "substantially justified" or that "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Act further provides that a court has discretion to reduce the amount awarded or to deny an award if the prevailing party "engaged in conduct which unduly or un-

reasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C).

■ In assessing the reasonableness of a fee request, a court typically begins by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see also Commissioner, Immigration and Naturalization Service v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (applying principles set forth in *Hensley* to EAJA fee request though not referring specifically to this portion of *Hensley*); *Penrod v. Apfel,* 54 F.Supp.2d 961, 964 (D.Ariz.1999) (multiplying reasonable fee by reasonable hours to set EAJA fee award). "The district court should ... exclude from this initial fee calculation hours that were not 'reasonably expended' ... [including] hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Similarly, as noted above, a district court may reduce the amount of the award if the prevailing party engaged in conduct that "unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C).

■ After calculating the product of reasonable hours times a reasonable rate, a court may adjust this presumptive fee award upward or downward to reflect the significance of the results obtained by the plaintiff. *See Hensley,* 461 U.S. at 434–36, 103 S.Ct. at 1940–41. "If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" even in a case where "plaintiff's claims · were interrelated, nonfrivolous, and raised in good faith." *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941. If a court decides that awarding the full amount requested would be excessive, the district court may either identify specific hours that should be eliminated or simply use its discretion to reduce the award to account for limited success. *See id.*

The parties have identified, and my research has uncovered, relatively few published opinions that address the propriety of awarding fees in a social security appeals case, such as this, in which the Commissioner agrees to a remand. In cases where the plaintiff moves for summary judgment *before* the Commissioner offers to remand, the cases suggest that courts typically award full fees, even if the ultimate result is that the case is remanded rather than reversed. *See, e.g., White v. Apfel,* 99–C–523, 2000 WL 106700 (N.D.Ill. Jan.25, 2000) (fees granted for motion for summary judgment filed before Commissioner agreed to a remand); *Jackson v. Heckler,* 629 F.Supp. 398 (S.D.N.Y.1986) (same but, of significance, suggesting that the government should express its willingness to remand before filing an answer). In at least one case, the court awarded fees not only for the hours expended preparing the summary judgment motion but also for the hours expended preparing a reply memorandum of law *after* the Commissioner had agreed to remand the case. *See Penrod v. Apfel,* 54 F.Supp.2d 961 (D.Ariz.1999) (awarding full fee award on ground that "filing a reply brief advocating that the Court grant outright summary judgment for Plaintiff, rather than stipulating to remand, did not unduly or unreasonably protract this proceeding").

In cases in which the Commissioner suggests a remand *before* the plaintiff files a motion for summary judgment and a remand is ultimately granted, at least some courts have found that the plaintiff's opposition was unreasonable or unnecessary. *See Williams v. Bowen,* 85–C–2653, 1987 WL 10559 (N.D.Ill. May 6, 1987) (refusing to award fees on ground that litigation after motion to remand was attributable to plaintiff's position rather than the government's); *McMullen v. Apfel,* 57 F.Supp.2d 773 (S.D.Iowa 1999) (reducing fee request by about half in case where plaintiff opposed Commissioner's motion to remand).

This is not, however, a uniform rate. Ms. McLaurin has provided a copy of an order issued by Judge Gershon of this district in a case in which the plaintiff opposed the government's offer to remand. Although Judge Gershon remanded the case, she incorporated some of plaintiff's specific requests in her remand order; therefore she found that plaintiff's time was expended reasonably and granted the full fee award requested. *See* Order, dated Nov. 15, 1999, *Kapitansky v. Apfel*, 98–CV–7503 (E.D.N.Y.) (Gershon, J.), attached as Exhibit 3 to Plaintiff's Supplementary Memorandum of Law in Support of the Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act ("Pl's Fee Mem.").

## II. *Application to this case*

The Commissioner does not dispute that plaintiff is the prevailing party by virtue of obtaining a remand to the agency. *See* Commissioner's Memorandum of Law in Partial Opposition to Counsel's Request for Attorney's Fees ("Comm. Fee Mem."), at 5; *Shalala v. Schaefer*, 509 U.S. 292, 302, 113 S.Ct. 2625, 2632, 125 L.Ed.2d 239 (1993) (winning remand pursuant to sentence four of 42 U.S.C. § 405(g) qualifies as prevailing for purposes of EAJA). The Commissioner also agrees that although its offer to remand the case was eminently reasonable, the position taken by the government in the agency proceedings was not substantially justified, and thus plaintiff is entitled to at least some fees. *See* Comm.Mem. at 5; 28 U.S.C. § 2412(d)(2)(D) (The "position of the United States" includes "the action or failure to act by the agency upon which the civil action is based.")

The Commissioner contends however that Ms. McLaurin's request for fees should be reduced because she unreasonably opposed the Commissioner's offer to remand. As reviewed above, the Commissioner offered to remand Ms. McLaurin's case before filing an answer. Ms. McLaurin refused to accept a voluntary remand.

The Commissioner then filed an answer and moved to remand the case. Ms. McLaurin opposed the motion and cross-moved for an outright reversal of the ALJ's opinion or, alternatively, a remand order limiting the issues that would be considered on review.

■ An assessment of whether plaintiff's time was reasonably expended, and the related question of whether even if reasonable, the award should be adjusted downward to reflect plaintiff's ultimate lack of success on the motion, requires a review of the underlying merits of this particular case. Plaintiff acknowledged in her papers opposing the Commissioner's remand motion that the medical evidence submitted could support a finding that Ms. McLaurin was capable of sedentary work. *See* Plaintiff's Memorandum of Law in Support of Cross–Motion, at 9. At the time she claimed disability and participated in the hearing, Ms. McLaurin was between 50 and 54, which is classified as "closely approaching advanced age." 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.00(g). Ms. McLaurin completed eighth grade. According to the grids, even a person such as Ms. McLaurin, with less than a high school education, closely approaching advanced age, and limited to sedentary work, is typically found not disabled if she can perform vocationally relevant past work or has transferable skills. *See id.* The vocational expert who testified at the hearing before the ALJ noted that Ms. McLaurin had worked as a cashier, which is typically a sedentary job, although in Ms. McLaurin's case it also included stocking shelves and cleaning, which is not sedentary. *See* Transcript of Record ("Tr."), at 74. Thus, Ms. McLaurin had vocationally relevant past work. The vocational expert also found that some of the skills that Ms. McLaurin had acquired as a cook, such as ordering supplies and keeping records, could be transferable to other sedentary work. *See id.* at 77–78. Based on this record, a finding that Ms. McLaurin was

unequivocally disabled could not reasonably have been expected.

■ I do not mean to suggest that Ms. McLaurin was definitely *not* disabled. As noted, there was medical evidence from Ms. McLaurin's treating physician that her impairments might make even sedentary work impossible. Plaintiff further contends that the ALJ failed to consider adequately Ms. McLaurin's allegations that her pain, massive obesity, and other non-exertional impairments further diminished her capacity for work and made analysis based on the grids improper. *See* 20 C.F.R. Pt. 404, Subpt P., App. 2, § 200.00(e)(2). It is the job of the ALJ, however, rather than the district court, to "to weigh the conflicting evidence in the record." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998). In reviewing this record, plaintiff should have recognized that the conflicting evidence clearly warranted remand.

■ Ms. McLaurin should have also recognized that there were no grounds to expect that I would grant her request for specific directives governing the remand. First, as reviewed above, there was contradictory medical evidence on the record and at least some of this evidence suggested that Ms. McLaurin might be capable of more than sedentary work. As already noted, it is the job of the ALJ, rather than the district court, to weigh conflicting evidence; accordingly, it could not have been expected that I would direct a finding that Ms. McLaurin was capable of at most sedentary work. There was also little reason to believe that I would order that this matter be transferred on remand to an ALJ other than Judge Kahn. As noted in the previous decision, a reviewing court will direct the Commissioner to appoint a new ALJ only when the record shows

clearly that the ALJ is biased. *See Joe v. Apfel*, 97–CV–772S, 1998 WL 683771, at * 5 (W.D.N.Y. July 10, 1998). The only specific conduct of the ALJ about which Ms. McLaurin complained was his failure to allow her counsel a "reasonable" opportunity to cross examine the medical expert with respect to an ambiguous statement he made about how long be believed Ms. McLaurin could walk or stand. *See* Plaintiff's Memorandum of Law in Support of Cross–Motion, at 5. Review of the record demonstrates, however, that Ms. McLaurin's lawyer was permitted an opportunity to ask several questions about this statement and that the ALJ specifically asked counsel at the conclusion of his questioning whether he had any additional questions. *See* Tr. 69–70. Moreover, even if counsel's cross examination of this particular witness were unreasonably curtailed, it is unlikely that a court would find that this error alone justified issuing a directive that a new ALJ be assigned. *Cf. Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir.1995) (ordering a new hearing before a different ALJ in a case where the transcript revealed that the original ALJ's questioning was repeatedly "coercive and intimidating, and totally irrelevant to the question of whether claimant was disabled").[1]

Since plaintiff could not have reasonably expected to prevail on her motion for a remand for benefits or her request for specific directives limiting the scope of review and assigning a new ALJ, I conclude that the time that plaintiff expended opposing the Commissioner's motion to remand was unnecessary and thus that these hours should be excluded from the fee calculation.[2]

I share Ms. McLaurin's expressed frustration with the social security appeals process, however. It is not infrequent that

---

**1.** Review of the transcript reveals that there were other instances in which the ALJ cut off counsel's questioning of witnesses. *See, e.g.,* Tr. 83–85. There is not, however, evidence of pervasive bias that would justify an order directing that a new ALJ be appointed.

**2.** I am not suggesting that Ms. McLaurin's motion was brought in bad faith or that it was

so unlikely to succeed that it should be deemed frivolous. *Cf. Jean*, 496 U.S. at 158 n. 6, 110 S.Ct. at 2319 n. 6 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565–66, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988), for proposition that "substantially justified" requires more than "merely undeserving of sanctions for frivolousness"). I also note that

the agency's Appeals Council fails to remand or modify a decision in which the ALJs' error is so apparent that the government itself subsequently admits the necessity of remand. Obviously, it would be preferable for all involved if a claimant in such a case did not need to file an appeal in district court to obtain a remand. Furthermore, I do not mean to suggest that it would *always* be unreasonable for a plaintiff to oppose an offer from the Commissioner to remand a case and to cross-move for summary judgment. There are cases in which a viable argument can be made that the medical evidence is clear and a plaintiff's inability to work has been established. In such cases, since a "remand for further evidentiary proceedings would serve no purpose," remand solely for the calculation of benefits is appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980). If a record demonstrates that a plaintiff could have reasonably expected to obtain a reversal, opposition by plaintiff to an offer to remand would not be excessive even if the court ultimately disagreed with plaintiff's arguments and remanded the case. Similarly, if by opposing a motion by the government to remand a case, a plaintiff could reasonably hope to obtain a remand order with significant specific directives guiding the review beyond those suggested by the Commissioner, the work associated with such an opposition would be reasonably expended and the results obtained would be significant. This was not such a case.

III. *Fee Award*

█ Ms. McLaurin requests an award of $5,807.35, based on 45 hours at a rate of $129.05 per hour. This is a reasonable hourly wage.[3] Plaintiff's request includes 14.25 hours which were spent researching, writing, and serving the motion and supporting papers opposing the Commissioner's motion to remand and 7.0 hours which were spent defending against the Commissioner's partial opposition to Ms. McLaurin's fee request.[4] *See* Memorandum in Support of Plaintiff's Petition for Counsel Fees, at Exh. A, and Supplementary Memorandum of Law in Support of Plaintiff's Motion, at Exh. 4. As explained above, I find that plaintiff's opposition to the Commissioner's motion was unnecessary and excessive. Also, since plaintiff has been unsuccessful in her defense in this fee litigation, she cannot receive fees for the hours she has spent preparing and writing her reply to the Commissioner's partial opposition to her fee request. *See Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 163 n. 10, 110 S.Ct. 2316, 2321 n. 10, 110 L.Ed.2d 134 (1990). Accordingly, I award $3,064.94, the product of 23.75 hours times $129.05 per hour.

### CONCLUSION

Plaintiff's motion for attorneys' fees pursuant to the Equal Access to Justice Act is granted in part. Plaintiff is awarded $3,064.94 in attorneys' fees.

SO ORDERED.

█

even if I were to deem these hours reasonably expended, I would adjust the fee award downward to reflect plaintiff's limited success. *See Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941.

3. The statutory rate is $125.00 per hour, *see* 28 U.S.C. § 2412(d)(2)(A), which may be adjusted to reflect the increase in the Consumer's Price Index. *See* Memorandum in Support of Plaintiff's Petition for Counsel Fees, at ¶ 6.

4. The Commissioner contends that the 2.25 hours that Ms. McLaurin spent reviewing the Commissioner's motion and memorandum of law in support of a remand should also be excluded. *See* Comm. Fee Mem. at 3 & n. 1. Although I have found that Ms. McLaurin's opposition to the motion was not reasonable, I note that reviewing the Commissioner's motion would have been necessary even if Ms. McLaurin had decided ultimately that she would not oppose it and thus conclude that this time was reasonably expended.